UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
MARTIN DEKOM, JULIE DEKOM, KENNETH
JACOBY, and DEBORAH JACOBY,

                           Plaintiffs,

        -against-                  <u>MEMORANDUM & ORDER</u>
                                      12-CV-3473(JS)(ARL)
NASSAU COUNTY, WILLIAM BIAMONTE,
LOUIS SAVINETTI, JOHN RYAN,
MATTHEW KIERNAN, FRANCIS X.
MORONEY, DONALD T. O'BRIEN,
RONALD HORES, CINDY PERDIKAKIS,
JOSEPH MONDELLO, PETER BEE, and
JOHN DOES 1-100,

                         Defendants.
---------------------------------------X
APPEARANCES
For Plaintiffs:
Martin Dekom               Martin Dekom, <u>pro se</u>
                         34 High Street
                         Manhasset, NY 11030

Julie Dekom               Julie Dekom, <u>pro se</u>
                         34 High Street
                         Manhasset, NY 11030

Kenneth Jacoby            Kenneth Jacoby, <u>pro se</u>
                         3016 Roxbury Road
                         Oceanside, NY 11572

Deborah Jacoby            Deborah Jacoby, <u>pro se</u>
                         3016 Roxbury Road
                         Oceanside, NY 11572

For Defendants:
County and Individual
Defendants               Peter Laserna, Esq.
                         Nassau County Attorney's Office
                         One West Street
                         Mineola, NY 11501

Individual Defendants    Christine Helen Price, Esq.
                         Ralph M. Cursio, Esq.

                          Steven G. Leventhal, Esq.
                          Thomas J. Mullaney, Esq.
                          Leventhal, Cursio, Mullaney & Sliney,
                              LLP
                          15 Remsen Avenue
                          Roslyn, NY 11576

SEYBERT, District Judge:

        Pro se Plaintiffs Martin Dekom ("Dekom"), Julie Dekom,
Kenneth Jacoby, and Deborah Jacoby (collectively "Plaintiffs")
commenced this action on July 13, 2012 against Defendants Nassau
County (the "County"); William Biamonte and Louis Savinetti,
Commissioners of the Nassau County Board of Elections ("NCBOE");
John Ryan, Republican counsel for the NCBOE; Matthew Kiernan,
assistant to Louis Savinetti; Francis X. Moroney, Chief Deputy
Comptroller of the County; Donald T. O'Brien, the Manhasset
Lakeville Fire Water Commissioner; Ronald Hores; Cindy
Perdikakis; Joseph Mondello, the Chairman of the Nassau County
Republication Committee; Peter Bee (collectively, except for the
County, the "Individual Defendants," and together with the
County, "Defendants"), and John Does 1-100.  Currently pending
before the Court are: (1) Defendants' motion to dismiss the
Complaint (Docket Entry 12); and (2) Plaintiffs' motion seeking
the undersigned's recusal (Docket Entry 13).  For the following
reasons, Defendants' motion is GRANTED and Plaintiffs' motion is
DENIED.

<u>BACKGROUND</u>

I.  <u>Factual Background</u>[1]

On July 14, 2011, Plaintiffs submitted petitions to the Nassau County Republican Committee (also referred to as the "Nassau GOP"), seeking to be placed on ballots for the office of "committeeman." (Compl. at 4-6.) As Plaintiffs describe the process, the NCBOE maintains custody of the petitions. (Compl. at 6.) Individuals seeking to file objections to a petition must do so through a Freedom of Information Law ("FOIL") request. (Compl. at 6.)

Plaintiffs allege that Defendant Francis X. Moroney ("Moroney"), "a senior officer of the Nassau GOP," used his stature to influence "junior Nassau County employee," Defendant Cindy Perdikakis to improperly file objections to Plaintiffs' petitions. (Compl. at 7-8.) Additionally, they allege that Defendant Donald T. O'Brien, whose views are "at odds" with those of Plaintiff Dekom, also influenced two individuals, including Defendant Ronald Hores, to file objections. (Compl. at 9-10.)

After submitting Plaintiffs' petitions, Dekom made FOIL requests for all of the petitions for "Member of the Nassau GOP" as well as a list of current members. (Compl. at 10-11.)

---

[1] The following facts are taken from Plaintiffs' Complaint and the documents attached thereto and are presumed to be true for the purposes of this Memorandum and Order.

According to Plaintiffs, the NCBOE raised several obstacles in responding to Dekom's FOIL requests, evidencing its policy of willfully concealing what should otherwise be available information. (Compl. at 10-11.)

On August 3, 2011, the NCBOE met to adjudicate Plaintiffs' petitions. (Compl. at 12.) According to Plaintiffs, this meeting should have been, but was not, public. (Compl. at 12-13.) At that time, the NCBOE rejected Plaintiffs' petitions, and on August 5, 2011 Plaintiffs received notice via United States Postal Service mail that their petitions were "insufficient." (Compl. at 14.) Plaintiffs assert that New York Election Law allowed them only three business days to file for judicial review. (Compl. at 16.) Accordingly, they allege, the notice of insufficiency was improperly delayed and, in any event, did not provide Plaintiffs with sufficient detail regarding how, exactly, their petitions were insufficient. (Compl. at 15-16.)

Thereafter, Dekom sought the minutes from the NCBOE's August 3, 2011 meeting. (Compl. at 16.) He twice submitted a FOIL request and followed up regarding availability of the minutes on several occasions, but did not receive them until August 15, 2011. (Compl. at 16-18.)

On August 17, 2011, Dekom submitted corrected petitions, even though the deadline had passed. (Compl. at 23.)

4

On August 30, 2011, Plaintiffs received letters from Defendant John Ryan stating that the corrected petitions had been denied. (Compl. at 25.)   The primary election took place on September 13, 2011 and Plaintiffs were not on the ballot.

After the primary, on September 20, 2011, the Nassau GOP and the three town Republican committees of Nassau County held conventions.  (Compl. at 28.)   Dekom sought to be elected as an officer of the Town of North Hempstead Republican Committee, which would have made him a Nassau GOP member. (Compl. at 28.)   However, at the outset of the North Hempstead Republican convention, Defendant Moroney "yelled at [Dekom] that the meeting was not public and [that] he could not be there." (Compl. at 29.)   Dekom apparently stayed, but observed a number of issues.  Defendant Peter Bee ("Bee") served as the temporary chair of the convention, but despite Bee's "renowned" status, there was no statutory roll call, the elections were "rigg[ed]," and members voted without producing "actual proxies."  (Compl. at 29.)

That same day, Dekom also sought additional party positions and attended the Nassau County Republican Committee convention.  (Compl. at 30.)   Again, Dekom alleges, Bee conducted the convention in a manner that did not conform to Election Law.  (Compl. at 30-31.)

II.  Procedural Background

        Prior to the instant Memorandum and Order, Plaintiff
Dekom has also litigated two relevant cases in the Supreme Court
of the State of New York.

        In Dekom v. Moroney, 34 Misc. 3d 1207(A), 946 N.Y.S.2d
66 (Sup. Ct. Nassau Cnty. 2012), Dekom sought an order declaring
the actions taken by the North Hempstead Republican Committee on
September 20, 2011, when Dekom attempted to be elected as an
officer of the Town of North Hempstead Republican Committee,
null and void.  The Supreme Court dismissed that case, finding
that Dekom had failed to join necessary parties, service was
improper, the case was barred by the ten-day statute of
limitations set by New York Election Law § 16-102, and that
Dekom lacked standing because he was not an "aggrieved
candidate" or other person designated by New York Election Law
§ 16-102(1).  Id. at *2.  Currently, there is an appeal pending
from that case (App. Div. Case No. 2012-1930).

        In Dekom v. Mondello, No. 17803/11 (Laserna Decl. Ex.
A), Dekom asserted that the Nassau County Republican Committee
convention was "conducted in violation of both applicable
committee rules and stated election law provisions."  (Laserna
Decl. Ex. A at 2.)  Once again, the Supreme Court found that
Dekom's action was barred by the ten-day statute of limitations
set by Election Law § 16-102, Dekom had failed to join necessary

parties, and Dekom was not an "aggrieved candidate."   (Laserna
Decl. Ex. A at 2-3.)

## DISCUSSION

The Court reads the Complaint to assert the following
claims pursuant to 42 U.S.C. § 1983 ("Section 1983"): (1)
violation of due process because Plaintiffs were deprived of
participation in the August 3, 2011 NCBOE hearing and their
petitions were improperly denied; (2) violation of due process
because Plaintiffs did not receive proper notice of the denial
of their petitions, both because the notice and the minutes of
the hearing were improperly delayed and because the notice
lacked sufficient detail; (3) violation of their First Amendment
rights to vote and to free speech and association [2]; and (4)
violation of their Equal Protection rights because they were
discriminated against based upon their "creed."   Plaintiffs also
allege claims for: (1) conspiracy pursuant to 42 U.S.C. § 1985
("Section 1985"); (2) violation of Section 11(b) of the Voting
Rights Act; (3) violation of New York's Open Meetings Law; and
(4) a state law claim for emotional distress.

Defendants move to dismiss each of these claims
because, they argue: (1) Plaintiffs were not deprived of their

---

[2] Plaintiffs allege that by denying their petitions and by
denying "Certificates to fill a Vacancy," which Plaintiffs also
submitted (see Compl. at 17, 27), they were unable to become
members of the Nassau GOP and therefore unable to vote for
positions such as the elections commissioner.

constitutional rights; (2) at least some of Plaintiffs' claims are barred by the Rooker-Feldman doctrine; and (3) the Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims. In the alternative, Defendants assert that should the Court decline to dismiss the Complaint, it should order Plaintiffs to join a necessary party and/or require Plaintiffs to provide a more definite statement. Plaintiffs move for recusal of the undersigned.

The Court will first discuss Plaintiffs' motion for recusal before turning to the motion to dismiss.

## I.  Plaintiffs' Motion for Recusal

Plaintiffs filed a one-page letter motion requesting that the undersigned recuse herself. (Pls.' Mot. to Recuse, Docket Entry 13.) The motion is a single sentence, stating: "Because of your relationships and recent history, and in the interest of avoiding an exhaustive treatment by motion, plaintiffs request you voluntarily remove yourself from this case, by January 30th, 2013." (Pl.s' Mot. to Recuse.) The Court, however, declines recusal.

The recusal of federal judges is governed by 28 U.S.C. § 455. Section 455 provides, in relevant part, that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal

bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §§ 455(a), (b)(1). The Second Circuit has held that the relevant inquiry is "whether an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal, or alternatively, whether a reasonable person, knowing all the facts, would question the judge's impartiality." United States v. Yousef, 327 F.3d 56, 169 (2d Cir. 2003) (internal quotation marks and citation omitted) (alteration in original); see also United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008).

"To establish a basis for recusal, '[m]ovants must overcome a presumption of impartiality, and the burden for doing so is substantial.'" Da Silva Moore v. Publicis Groupe, 868 F. Supp. 2d 137, 150 (S.D.N.Y. 2012) (quoting Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. Int'l Union, 332 F. Supp. 2d 667, 670 (S.D.N.Y. 2004)). "[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." Aguinda v. Texaco, Inc. (In re Aguinda), 241 F.3d 194, 201 (2d Cir. 2001); see also Thorpe v. Zimmer, Inc., 590 F. Supp. 2d 492, 494 (S.D.N.Y. 2008) ("The Court has an affirmative duty not to disqualify itself unnecessarily."). A court's decision not to recuse itself is

reviewed by the Second Circuit for abuse of discretion. LoCascio v. United States, 473 F.3d 493, 495 (2d Cir. 2007).

Plaintiff Dekom is not new to this Court. Recently, Plaintiffs Martin Dekom and Kenneth Jacoby moved for the undersigned's recusal in another action, Dekom v New York, No. 12-CV-1318(JS)(ARL). There, Dekom and Jacoby argued for recusal because "they disagree[d] with the decisions that have been made to date" and "they believe[d] that, due to the fact that the undersigned was elected to the state bench in Nassau County as a member of the Republican Party, Judge Seybert can be expected to be particularly loyal to the machine which made her." Dekom v. New York, No. 12-CV-1318, 2013 WL 3095010, at *7 (E.D.N.Y. June 18, 2013) (internal quotation marks and citation omitted). The Court found neither argument persuasive.

Here, although Plaintiffs do not clearly state the basis of their motion, it seems that they seek to rehash the very same arguments that this Court has already rejected. First, as to this Court's "recent history," Plaintiffs apparently challenge rulings that were not in their favor. However, as the Court has previously noted, "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" Id. at *7 (quoting LocCascio v. United States, 372 F. Supp. 2d 304, 315 (E.D.N.Y. 2005), aff'd, 473 F.3d 493 (2d Cir. 2007)).

Second, as to this Court's "relationships," it is unclear whether Plaintiffs intend to assert bias due to this Court's prior dealings with the Plaintiffs or whether they claim bias due to the undersigned's prior political affiliations. To the extent that Plaintiffs believe that the undersigned should recuse herself due to the Plaintiffs' prior litigations and the Court's prior rulings, this is not a proper basis for recusal and, in any event "the Court has been lenient and accommodating to Plaintiffs on multiple occasions" in their other cases. Id. at *7. To the extent that Plaintiffs raise an issue as to prior political affiliations, the Court has noted that "'it is rare that recusal is granted based only on a question of impartiality because of the judge's former affiliation.'" Id. at *8 (quoting Local 338, RWDSU v. Trade Fair Supermarkets, 455 F. Supp. 2d 143, 144 (E.D.N.Y. 2006)). Furthermore, in Dekom v. New York, many of the defendants in that action are also defendants here, and the Court noted that it had no particular relationships or loyalties to these defendants. Id. at *8.

Accordingly, Plaintiffs' recusal motion is DENIED.

## II. Defendants' Motion to Dismiss

Defendants seek dismissal of Plaintiffs' Complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will first address the applicable

11

legal standards before turning to Defendants' motion for specifically.

A.  Legal Standards

1.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, --- U.S. ----, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).  The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of the plaintiff because subject matter jurisdiction must be shown affirmatively.  See id.; Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Morrison, 547 F.3d at 170.

2.  Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss for failure to state a claim, the Court applies a "plausibility

standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).   First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556).  Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (citation omitted); accord Harris, 572 F.3d at 72.

While pro se plaintiffs enjoy a somewhat more liberal pleading standard, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citation omitted)), they must still comport with the procedural and substantive rules of law, see Colo. Capital v. Owens, 227 F.R.D. 181, 186 (E.D.N.Y. 2005).

B.   <u>Plaintiffs' Claims Pursuant to Section 1983</u>

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (2000).   Section 1983 does not create a substantive right; rather, to recover, a plaintiff must establish the deprivation of a separate, federal right.   <u>See</u> <u>Thomas v. Roach</u>, 165 F.3d 137, 142 (2d Cir. 1999).

Defendants assert that this action should be dismissed because Plaintiffs were not deprived of any constitutional rights.   The Court will address each of Plaintiffs' claims separately.

1.   <u>Due Process</u>

Plaintiffs allege that Defendants violated their due process rights by depriving them of the opportunity to participate in the August 3, 2011 hearing, improperly denying their petitions, and failing to give them proper notice of denial, both because the notice and the minutes of the hearing were delayed and because the notice lacked sufficient detail. The Court disagrees.

The Due Process Clause protects against deprivations of constitutionally protected rights without due process of law. See Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 464 (2d Cir. 2006). "'[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.'" Id. at 465 (quoting Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (alteration in original)). In considering the adequacy of the process, "'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'" Id. (quoting Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996)). If the state conduct is random and unauthorized, a post-deprivation remedy satisfies due process. Id. If the state action is based on established state procedures, a post-deprivation remedy is not necessarily adequate and a pre-deprivation hearing may also be necessary. Id.

Both parties rely heavily on Rivera-Powell v. N.Y.C. Bd. of Elections and dispute whether the state actions at issue here were random and unauthorized. (See Defs.' Br. in Support of Mot. to Dismiss ("Defs.' Br."), Docket Entry 12-3, at 4-7; Pls.' Br. in Opp. to Mot. to Dismiss ("Pls.' Opp. Br."), Docket Entry 17, at 3-8.) In that case, Verena Rivera-Powell, who

sought to be a candidate for judge of the Civil Court of the City of New York, and her supporters, appealed an order from the Southern District of New York dismissing their case.  470 F.3d at 460-61.  The plaintiffs contended, inter alia, that the New York City Board of Elections violated their due process rights under the Fourteenth Amendment and infringed on their freedom of association and voting rights in violation of the First Amendment when it removed Rivera-Powell from the ballot after receiving an allegedly untimely objection to her petition.  Id. at 461.

The Second Circuit ultimately determined that, regardless of whether or not the actions in question were random and unauthorized, the process provided to Rivera-Powell was adequate.  Id. at 466.  First, the Court said, Rivera-Powell received a pre-deprivation hearing when the Board considered the objections to her petition.  Id.  Second, and "[m]ore importantly," the Court declared, "after the Board's action, Rivera-Powell had the opportunity to obtain full judicial review by way of a special proceeding under New York Election Law section 16-102, which provides for expedited proceedings as to designations."  Id. at 467.

In the present case, Defendants maintain that any alleged actions were random and unauthorized, and therefore there was no due process violation because Plaintiffs could have

16

sought a post-deprivation remedy through New York Election Law § 16-102 ("Section 16-102").  (Defs.' Reply Br., Docket Entry 19, at 5-6.)  Plaintiffs assert that they were entitled to a pre-deprivation hearing and because, unlike Rivera-Powell, they were not given the opportunity to participate in the August 3, 2011 hearing regarding objections to their petitions, Defendants violated their due process rights.  (Pls.' Opp. Br. at 3.)

Significantly, the Second Circuit in Rivera-Powell noted that, depending on when one considers a "deprivation" to have occurred, a proceeding pursuant to Section 16-102 could actually be considered pre-deprivation.  Rivera-Powell, 470 F.3d at 468, n.10.  Since then, courts have addressed this very issue, finding that Section 16-102 provides a pre-deprivation remedy and thus denying due process claims strikingly similar to those Plaintiffs now raise.  See, e.g., Murawski v. Pataki, 514 F. Supp. 2d 577, 586 n.5 (S.D.N.Y. 2007) ("Even in the absence of an opportunity to be heard prior to a BOE decision, however, the statutory provision for an expedited review of that determination by the New York Supreme Court provides adequate pre-deprivation review and satisfies due process requirements."); Douglas v. Niagara Cnty. Bd. of Elections, No. 07-CV-0609, 2007 WL 3036809, at *5 (W.D.N.Y. Oct. 16, 2007) ("In the Court's view, the special proceeding constitutes an adequate 'pre-deprivation' procedure.").  Section 16-102 specifically

allows for an expedited judicial proceeding to review the Board of Election's decision, thus providing a remedy before the primary election. See Douglas, 2007 WL 3036809, at *5. This is true even where, as here, a plaintiff alleges that the Board of Elections delayed or deprived him of information. See Tiraco v. N.Y. State Bd. of Elections, --- F. Supp. 2d ----, 2013 WL 4046257, at *7-8 (E.D.N.Y. Aug. 7, 2013) (dismissing a due process claim where the plaintiff alleged that the City Board denied him access to the congressional ballot by failing to timely provide him with the 6th Congressional District map and information about Independence Party voters); Leroy v. N.Y.C. Bd. of Elections, 793 F. Supp. 2d 533, 537-38 (E.D.N.Y. 2011) (dismissing a due process claim where the plaintiff alleged, in part, that the Board of Elections violated her due process rights by waiting four days to send her notification that her amended petition was defective).

Furthermore, that Plaintiffs failed to avail themselves of a Section 16-102 proceeding is of no moment. Rivera-Powell, 470 F.3d at 468 n.9 ("The fact that Rivera-Powell failed properly to pursue the state court action, and that it is now too late to do so, does not affect our due process analysis."); Murawski, 514 F. Supp. 2d at 586 ("The fact that plaintiff did not avail himself of the opportunity to challenge the State BOE's determination does not create a procedural due

18

process violation."). What is significant is that they could have done so if they had chosen. See Murawski, 514 F. Supp. 2d at 586 (noting that the plaintiff could have raised "any and all issues relating to the validity of his petition" in a Section 16-102 proceeding).

Accordingly, Defendants' motion to dismiss Plaintiffs' Section 1983 claims based upon alleged deprivations of due process is GRANTED.

2. First Amendment

Plaintiffs also allege that Defendants' actions violated their First Amendment rights to vote and to political speech and associational rights. The Court disagrees.

Here, Plaintiffs' First Amendment claims are "virtually indistinguishable" from their due process claims. Rivera-Powell, 470 F.3d at 468. Thus, since Plaintiffs' due process claims fail, their First Amendment claims necessarily fail as well. Id. at 469 ("When, as here, a plaintiff challenges a Board of Election decision not as stemming from a constitutionally or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality."); accord

Marchant v. N.Y.C. Bd. of Elections, No. 13-CV-5493, 2013 WL
4407098, at *4 (S.D.N.Y. Aug. 16, 2013).

Accordingly, Defendants' motion to dismiss Plaintiffs'
First Amendment claims is GRANTED.

### 3. Equal Protection

Plaintiffs further allege that Defendants violated
their equal protection rights on the basis of their "creed."
(Compl. at 32.) Defendants argue that Plaintiffs' equal
protection claims are conclusory and therefore require
dismissal. The Court agrees.

"The Equal Protection Clause of the Fourteenth
Amendment commands that no State shall deny to any person within
its jurisdiction the equal protection of the laws, which is
essentially a direction that all persons similarly situated
should be treated alike." City of Cleburne v. Cleburne Living
Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313
(1985) (internal quotation marks and citation omitted). "The
Second Circuit has held that 'a § 1983 action to remedy errors
in the election process allegedly violating the equal protection
clause does not exist unless the state action constituted
intentional or purposeful discrimination.'" Marchant, 2013 WL
4407098, at *4 (quoting Gold v. Feinberg, 101 F.3d 796, 800 (2d
Cir. 1996)). Thus, Plaintiffs must allege that Defendants
intentionally discriminated against them "either by adopting out

of [discriminatory] animus policies which are facially neutral but have a . . . discriminatory effect, or by applying a facially neutral policy in a . . . discriminatory manner." Rivera-Powell, 470 F.3d at 470.

Plaintiffs assert that Defendants discriminated against them because they are "'Tea Party' activists within the GOP, and the defendants are part of the 'establishment' which resists their reforms." (Compl. at 32.)  However, Plaintiffs' allegations "amount to nothing more than conclusory assertions devoid of adequate factual enhancement that would render plausible [their] equal protection claim[s]." Tiraco, 2013 WL 4046257, at *12.  There are no allegations to suggest a discriminatory animus, and even Dekom's claim of voter intimidation alleges only that Moroney "yelled at [Dekom] that the meeting was not public" (Compl. at 29), not that there were any utterances or suggestions of animus.  See Leroy, 793 F. Supp. 2d at 542 ("There is absolutely nothing in the pleadings to suggest that Leroy's gender played any role in [the] BOE's decision.").

The Court also finds that, even if Plaintiffs intend to bring equal protection claims under a "class of one" theory, such claims fail.  See Tiraco, 2013 WL 4046257, at *12 (rejecting class of one theory even though not raised by the parties).  "In order to adequately allege an equal protection

claim on a 'class of one' theory, a plaintiff must demonstrate that: (1) he was 'intentionally treated differently from others similarly situated,' and (2) 'that there is no rational basis for the difference in treatment.'" Vaher v. Town of Organgetown, N.Y., 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).

Plaintiffs proffer two examples of individuals that were similarly situated but treated differently. Neither, however, supports Plaintiffs' proposition that candidates who were endorsed by the Nassau GOP were subject to different, more favorable standards. Plaintiffs allege that Norma Gonsalves, who was endorsed by the Nassau GOP for county legislature, was treated more favorably than Plaintiffs because Savinetti did not agree with the bipartisan research team that entering the wrong town on the line specifically designated for "Town" invalidated her petition. (Compl. at 22.) It is not wholly clear from the NCBOE minutes regarding objections to Gonsalves's petition (Compl. Ex. F) what the basis was for Savinetti's disagreement. In any event, the bipartisan research team determined, and there was no dispute that, Gonsalves had submitted thirty-one valid signatures. (Compl. Ex. F.) As Gonsalves only required twenty-nine signatures, the Nassau County Board of Elections deemed her petition valid. (Compl. Ex. F.)

Plaintiffs also allege that Defendants treated Christian Browne, a Republican endorsed by the Nassau GOP for county legislator, more favorably because in his case, the Nassau GOP Commissioners split on the validity of his petition, and it was therefore deemed valid. (Compl. at 26.) Plaintiffs assert that "[i]f Biamonte disagreed with Savinetti/Ryan, the plaintiffs['] petitions should have been deemed valid as well. Again, the standards changed when applied to plaintiffs." (Compl. at 26.) However, the NCBOE minutes addressing the objections to Plaintiffs' petitions specifically state that there was no disagreement among the Commissioners. (Compl. Ex. N.)

Thus, neither example shows how "the standards changed" when applied to Plaintiffs or how anyone was treated more favorably than them. See Leroy, 793 F. Supp. 2d at 542 ("The lack of similarly situated individuals also makes any 'class of one' claim non-meritorious, because, to prevail on such a claim, Leroy 'must demonstrate that [she was] treated differently than someone who is prima facie identical in all relevant respects.'" (quoting Prestopnik v. Whelan, 249 F. App'x 210, 213 (2d Cir. 2007) (alteration in original)). Accordingly, Defendants' motion to dismiss Plaintiffs' equal protection claims is GRANTED.

C.   <u>Plaintiffs' Claims Regarding the September 20, 2011 Conventions</u>

In addition to the aforementioned allegations, Counts thirteen and fourteen of the Complaint also raise various claims regarding the September 20, 2011 Nassau GOP and North Hempstead Republican Committee conventions.   More specifically, the Complaint alleges that Moroney violated Section 11(b) of the Voting Rights Act by intimidating Dekom at the outset of the North Hempstead Republican convention[3] (Count 13) and that Bee, at the direction or consent of Mondello and Moroney, conducted the Nassau GOP convention in such a manner as to deprive Dekom of his constitutional rights (Count 14).   Defendants maintain that these claims are barred by the <u>Rooker-Feldman</u> doctrine. Plaintiffs counter that their claims must survive because they were not previously litigated.   Plaintiffs' argument is unavailing.

The <u>Rooker-Feldman</u> doctrine "establishes the principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." <u>MacPherson v. Town of Southampton</u>, 738 F. Supp. 2d 353, 362

---

[3] Although Count 17 of the Complaint also asserts a claim pursuant to Section 11(b) of the Voting Rights Act because "defendants engaged in a pattern of voter intimidation" (Compl. at 33), the only allegations regarding voter intimidation are that Moroney yelled at Dekom during the North Hempstead Republican Committee convention, and therefore the Court does not read this as a separate, viable claim.

(E.D.N.Y. 2010).   Courts in this Circuit typically apply four factors to determine whether Rooker-Feldman bars a federal suit, namely that: (1) plaintiff is a state court loser; (2) plaintiff complains of injuries caused by the state court judgment; (3) plaintiff seeks review of the state court judgment; and (4) the state court judgment was rendered before district court proceedings began.   Id.

The case law is clear that "recasting [a] complaint in the form of a civil rights action pursuant to 42 U.S.C. § 1983" does not avoid the Rooker-Feldman bar.   Fariello v. Campbell, 860 F. Supp. 54, 65 (E.D.N.Y. 1994).   Whether the doctrine bars the subsequent Section 1983 federal action depends upon whether the Section 1983 claims are "inextricably intertwined" with the state court judgment.   Id.

As the Court's prior recitation of the procedural history makes clear, Dekom lost in two prior state court actions regarding the September 20, 2011 conventions.   See supra pp. 6-7.   Thus, the first and fourth factors in a Rooker-Feldman analysis are satisfied.   What is unclear, however, is whether Plaintiffs complain of injuries caused by those state court judgments and, therefore, seek their review.   To the extent that they do raise such claims, they are clearly barred by Rooker-Feldman and, accordingly, Defendants' motion to dismiss is GRANTED in this regard.

However, Plaintiffs argue in their opposition brief that their current claims under Counts 13 and 14 were not previously litigated in the state court actions. (Pls.' Opp. Br. at 12.) Where, as here, Plaintiffs re-raise issues that were the subject matter of a state court judgment but do not complain of injuries caused by the state court judgment, collateral estoppel and res judicata may present a bar, even if the Rooker-Feldman doctrine does not. See Hayes v. Cnty. of Sullivan, 853 F. Supp. 2d 400, 424 n.22 (S.D.N.Y. 2012).

"Under the doctrine of res judicata, . . . 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action' not just those that were actually litigated." Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 351 (E.D.N.Y. 2010) (quoting Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999)). New York uses the "transactional approach" to res judicata, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Thus, "[t]he doctrine applies only if (1) there is a previous adjudication on the merits; (2) the previous action involved [the party against whom res judicata is invoked] or its privy; and (3) the claims

involved were or could have been raised in the previous action." Caldwell, 701 F. Supp. 2d at 351 (internal quotation marks and citation omitted) (alteration in original).

Here, it is undisputed that the state court actions were on the merits, as they both dismissed the complaints therein. See Dekom v. Moroney, 34 Misc. 3d 1207(A), 946 N.Y.S.2d 66 (Sup. Ct. Nassau Cnty. 2012); Laserna Decl. Ex. A. Furthermore, both Counts 13 and 14 appear to be on behalf of Plaintiff Dekom only, who was also a plaintiff in both state court actions.  (See Compl. at 29 (Count 13 of the Complaint, which alleges that Moroney intimidated Dekom); id. at 31 (Count 14, alleging that "Bee . . . conducted the proceeding in such a way [as] to prevent participation by anyone not preselected, and Dekom, being an outsider, was thus prevented.  This resulted in him [i.e., Dekom] being deprived of the right to vote, and political speech and associational rights.").)  Finally, Dekom could have brought his current claims in the prior state court actions.  The state court actions involved the very same subject matter as Counts 13 and 14--the September 20, 2011 conventions-- and had fully occurred by the time he commenced those actions. Accordingly, Counts 13 and 14 are barred by res judicata and Defendants' motion to dismiss these claims is GRANTED.

D.  <u>Plaintiffs' Claims Pursuant to Section 1985</u>

Plaintiffs have also alleged that Defendants conspired to violate their constitutional rights in violation of Section 1985. However, as the Court has found that Defendants did not violate Plaintiffs' constitutional rights, a claim for conspiracy under Section 1985 necessarily fails as well. <u>See Malsh v. Austin</u>, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) ("[T]here can be no conspiracy to violate the plaintiff's constitutional rights because, as explained above, the plaintiff has failed to allege any facts showing that the actions concerning the plaintiff involved any violations of his constitutional rights."); <u>Trombly v. O'Neill</u>, --- F. Supp. 2d ----, 2013 WL 869514, at *9 (N.D.N.Y. Mar. 7, 2013) ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." (internal quotation marks and citation omitted)). Accordingly, Defendants' motion to dismiss Plaintiffs' Section 1985 conspiracy claim is GRANTED.

III.  <u>Defendants' Request for Attorneys' Fees</u>

Finally, Defendants' reply brief also raises the issue of attorneys' fees. However, a party cannot raise arguments for the first time in a reply brief. <u>See Fairfield Fin. Mortg. Grp., Inc. v. Luca</u>, 584 F. Supp. 2d 479, 485 n. 2 (E.D.N.Y. 2008). Thus, to the extent that Defendants seek attorneys' fees, they must make a separate motion for such relief.

IV.  <u>Plaintiffs' State Law Claims</u>

Defendants further move for this Court to decline pendent jurisdiction on any of Plaintiffs' state law claims.  As the Court has dismissed all of Plaintiffs' federal claims, the Court declines pendent jurisdiction over Plaintiffs' state law claims.

"A federal court has the power to hear state law claims under the doctrine of pendent jurisdiction if the state and federal claims derive from a 'common nucleus of operative fact' such that the plaintiff ordinarily would be expected to try them all in one judicial proceeding."  <u>Drummer v. DCI Contracting Corp.</u>, 772 F. Supp. 821, 831 (S.D.N.Y. 1991). Whether to exercise pendent jurisdiction is within the Court's discretion, though the Court may consider factors such as judicial economy, convenience, and fairness.  <u>St. Louis v. N.Y.C. Health & Hosp. Corp.</u>, 682 F. Supp. 2d 216, 238 (E.D.N.Y. 2010).  "[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."  <u>Tops Marks, Inc. v. Quality Markets, Inc.</u>, 142 F.3d 90, 103 (2d Cir. 1998) (emphasis omitted).

Accordingly, Defendants' motion in this regard is GRANTED and Plaintiffs' state law claims are DISMISSED WITHOUT PREJUDICE.

## V.   Leave to Replead

Although Plaintiffs have not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999), overruled on other grounds by Gonzaga v. Doe, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)). Because, as explained above, Plaintiffs' claims fail as a matter of law, leave to replead would be futile. Accordingly, leave to replead is DENIED, and, with the exception of Plaintiffs' state law claims, Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for recusal is DENIED, Defendants' motion to dismiss is GRANTED and

Plaintiffs' Complaint, except for any state law claims, is DISMISSED WITH PREJUDICE.  Furthermore, if Defendants intend to file a motion for attorneys' fees, they must do so within thirty (30) days of the date of this Memorandum and Order.

      The Clerk of the Court is directed to serve a copy of this Memorandum and Order on the pro se Plaintiffs and mark this matter CLOSED.

                                 SO ORDERED.

                                 /s/ JOANNA SEYBERT
                                 Joanna Seybert, U.S.D.J.

Dated:     September   18  , 2013
              Central Islip, NY